Rachel Hankey, CA Bar No. 226325
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (415) 744-6471
Email: Rachel.hankey@usdoj.gov

Alexis A. Lien, OR State Bar No. 110569
Assistant United States Attorney
Office of United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Phone: (503) 727-1098
Email: Alexis.Lien@usdoj.gov
*Attorneys for Plaintiff, United States of America*

Nina Englander, OR State Bar No. 106119
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Phone: (971) 673-1911
Email: Nina.Englander@doj.state.or.us
*Attorney for Plaintiff, State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA, STATE OF OREGON
BY AND THROUGH DEPARTMENT OF
ENVIRONMENTAL QUALITY,

                Plaintiffs,

    v.

Case No. 23-cv-968
COMPLAINT

CITY OF SANDY, OREGON

                         Defendant.

_____

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Oregon by and through the Oregon Department of Environmental Quality ("Oregon"), by the authority of the Attorney General of Oregon and through its undersigned counsel, acting at the request of the Oregon Department of Environmental Quality ("DEQ"), jointly file this Complaint and allege as follows:

## NATURE OF ACTION

1. This is a civil action for injunctive relief and civil penalties, brought under Section 309(b) and (d) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. §§ 1319 (b) and (d), and under Oregon Revised Statutes ("ORS") 468.035(1)(k) and 468.140, against Defendant, the City of Sandy, Oregon ("Sandy" or the "City") for unpermitted and illegal discharges of pollutants in violation of Section 301 of the CWA, 33 U.S.C. § 1311, a Permit issued under 402 of the CWA, 33 U.S.C. § 1342, and ORS 468B.025(1) and (2).

2. Oregon has joined this action as a plaintiff, thereby satisfying the requirement of Section 309(e) of the CWA, 33 U.S.C. 1319(e).

## JURISDICTION, VENUE, AUTHORITY, AND NOTICE TO THE STATE

3. The Court has subject matter jurisdiction over this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1331, 1345, and 1355.

4. The Court has supplemental jurisdiction over the Oregon state law claims alleged herein pursuant to 28 U.S.C. § 1367(a), because the Oregon claims are related to the federal claims and form part of the same case or controversy.

5. The Court has personal jurisdiction over the City and venue is proper in the District of Oregon pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because this is the judicial district where the City is located and where the alleged violations occurred.

6. The Attorney General of the United States is authorized to appear and represent the United States in this action pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

7. The Oregon Attorney General has authority to bring this action on behalf of DEQ in accordance with ORS 180.060.

8. As a signatory to this Complaint, Oregon has actual notice of the commencement of this action in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## PARTIES

9. The United States is acting at the request and on behalf of the EPA Administrator.

10. Oregon is acting at the request and on behalf of DEQ and is a party in this action in accordance with Section 309(e) of the CWA, 33 U.S.C. § 1319(e).

11. Sandy is a city and a political subdivision of Oregon, created pursuant to the laws of Oregon.

Complaint                                                                                                                     Page 3
23-cv-968

12. Sandy is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

13. Sandy is a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and the regulations promulgated thereunder at 40 C.F.R. § 122.2.

## STATUTORY BACKGROUND

### A. The Clean Water Act and Oregon Water Pollution Control Laws

14. The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person to waters of the United States except in compliance with that section, and, where applicable, a national pollutant discharge elimination system ("NPDES") permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16. ORS 468B.025 provides that no person shall cause pollution of any waters of the state or place or cause to be placed any wastes in a location where such wastes are likely to escape or be carried into the waters of the state by any means, or discharge any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established by rule for such waters by the Environmental Quality Commission. The statute further provides no person shall violate the conditions of any waste discharge permit issued under ORS 468B.050.

17. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of pollutants" as any addition of any pollutant to navigable waters from any point source.

18. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to include sewage, sewage sludge, biological materials, and municipal waste.

19. Pursuant to ORS 468B.005, the term "pollution" or "water pollution" means such alteration of the physical, chemical or biological properties of any waters of the state, including change in temperature, taste, color, turbidity, silt or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive or other substance into any waters of the state, which will or tends to, either by itself or in connection with any other substance, create a public nuisance or which will or tends to render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational or other legitimate beneficial uses or to livestock, wildlife, fish or other aquatic life or the habitat thereof.

20. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), and ORS 468B.005, define the term "point source" as any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, or conduit from which pollutants are or may be discharged.

21. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as the waters of the United States, including the territorial seas.

22. ORS 468B.005 defines "Water" or "the waters of the state" to include lakes, bays, ponds, impounding reservoirs, springs, wells, rivers, streams, creeks, estuaries, marshes, inlets, canals, the Pacific Ocean within the territorial limits of the State of Oregon and all other bodies of surface or underground waters, natural or artificial, inland or coastal, fresh or salt, public or private (except those private waters which do not combine or effect a junction with natural surface or underground waters), which are wholly or partially within or bordering the state or within its jurisdiction.

23. Section 212 of the CWA, 33 U.S.C. § 1292, defines "treatment works" as "any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature to implement section 1281 [Section 201 of the

CWA] . . . including intercepting sewers, outfall sewers, sewage collection systems, pumping, power, and other equipment, and their appurtenances."

24. ORS 468B.005 defines "Treatment works" to mean any plant or other works used for the purpose of treating, stabilizing or holding wastes.

25. EPA regulations at 40 C.F.R. § 403.3(q) define "publicly owned treatment works" or "POTW" as a "treatment works as defined by section 212 of the [CWA], which is owned by a State or municipality (as defined by section 502(4) of the Act)."

### B. Federally Issued NPDES Permits and Oregon Issued NPDES Permits

26. Section 402 of the CWA, 33 U.S.C. § 1342, provides that the permit-issuing authority may issue a NPDES permit (or State equivalent) authorizing the discharge of pollutants, upon condition that such discharge will meet all applicable requirements under specified sections of the Act or such conditions that the Administrator determines are necessary to carry out the provisions of the Act, and subject to other conditions that the Administrator deems appropriate to assure compliance with those requirements.

27. Under Section 402(b) of the CWA, 33 U.S.C. § 1342(b), EPA may approve a state to administer its own permit program for discharges into navigable waters within its jurisdiction. Pursuant to Section 402(b), Oregon was granted NPDES permitting authority within the jurisdictional boundaries of Oregon on September 26, 1973. Accordingly, by and through DEQ, Oregon issues NPDES Permits authorizing the discharge of waste or pollutants into or adjacent to water in the state, pursuant to ORS 468B.050.

### C. Enforcement Authorities of the United States and Oregon

28. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA Administrator to commence a civil action for appropriate relief, including a permanent or

temporary injunction, when any person is in violation of Section 301 of the CWA, 33 U.S.C. § 1311, or a permit condition or limitation in a permit issued by EPA or a state under Section 402 of the CWA, 33 U.S.C. § 1342.

29. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates a permit condition or limitation in a permit issued by EPA or a state under Section 402 of the CWA, 33 U.S.C. § 1342, shall be liable for civil penalties. Adjusted for inflation, civil penalties of up to $64,618 per day are available for each violation which takes place after November 2, 2015. 40 C.F.R. § 19.4 (including amendments to that regulation that were promulgated at 88 Fed. Reg. 986 (Jan. 6, 2023)).

30. ORS 468.035(1)(k) authorizes DEQ to institute in a court of competent jurisdiction proceedings to compel compliance with any rule, standard or permit, or condition thereof, issued pursuant to ORS Chapter 468B. Civil penalties of up to $25,000 per day are available for each day of violation. ORS 468.130.

## GENERAL ALLEGATIONS

31. At all times relevant to this Complaint, Sandy has owned and operated a "treatment works" within the meaning of Section 212 of the CWA, 33 U.S.C. § 1292, and a "POTW" within the meaning of 40 C.F.R. § 403.3(q) (the "Sandy POTW").

32. At all times relevant to this Complaint, the Sandy POTW has operated a wastewater treatment plant ("WWTP") at 33400 Southeast Jarl Road in Boring, Oregon and associated wastewater collection systems. The WWTP and associated collection system comprise the Sandy POTW.

33. The WWTP is a wastewater treatment system used to store, treat, recycle, and reclaim municipal sewage or industrial wastes of a liquid nature.

34. The WWTP is fed by an extensive collection system designed to convey wastewater, including untreated sewage and other pollutants, from the City's wastewater customers through pipes, channels, tunnels, or other conduits to its corresponding WWTP for treatment.

35. Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), and ORS 468B.050, the State issued the City NPDES Permit 102492 for the City's WWTP and associated wastewater collection system (collectively the "Sandy WWTP NPDES Permit") and issued the City a 1200-Z Stormwater Discharge General NPDES Permit ORRR900001 authorizing stormwater discharges associated with an industrial activity ("Sandy Industrial Stormwater Permit").

36. Sandy's WWTP NPDES Permit authorizes discharges of treated wastewater from the WWTP outfalls only if such discharges are made in accordance with the waste discharge limitations, monitoring and reporting requirements, and other conditions set forth in the permit.

37. Treated wastewater from the plant is discharged to Tickle Creek in the Clackamas River Basin during the winter season, in accordance with the Sandy WWTP NPDES Permit. The Sandy WWTP NPDES Permit allows the City to discharge treated effluent November 1 through April 30 and sets waste discharge limits on pollutants, including five-day biochemical oxygen demand (BOD5), total suspended solids (TSS), E. coli bacteria, and ammonia ("Waste Discharge Limitations").

38. At all times relevant herein, Sandy has "discharged," and continues to discharge, "pollutants" from its POTW within the meaning of Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12) and ORS 468B.025, from "point sources," within the meaning of

Section 502(14) of the CWA, 33 U.S.C. § 1362(14) and ORS 468B.005, into Tickle Creek. Water from Tickle Creek ultimately flows to Deep Creek, which then flows into the Clackamas River, which then flows to the Willamette River, which then flows into the Columbia River, and then into the Pacific Ocean.

39. At all times relevant herein, Sandy has "caused pollution" of "waters of the state" and continues to cause "pollution" from its POTW within the meaning of ORS 468B.025 and 468B.005.

40. Tickle Creek is a "navigable water" within the meaning of Section 502(7) of the CWA 33 U.S.C. § 1362(7), and a "water of the state" pursuant to ORS 468B.005(10).

41. The Sandy WWTP NPDES Permit states that the permittee has a duty to comply with all conditions of the permit, and that failure to comply with any permit constitutes a violation of ORS 468B.025 and the federal CWA and is grounds for an enforcement action.

42. The Sandy WWTP NPDES Permit prohibits bypasses, which are defined as the intentional diversion of wastewater away from any portion of the treatment facility, unless the following three conditions are met: the bypass is unavoidable to prevent loss of life, personal injury, or severe property damage; there are not feasible alternatives to bypass; and the permittee submits required notices and requests of the bypass to DEQ.

43. Since at least November 2017, Sandy has had numerous violations of the limitations imposed by its permit, including bypasses, and violations of waste discharge limits for five-day biochemical oxygen demand (BOD5), total suspended solids (TSS), and E. coli bacteria.

44. The Sandy Industrial Stormwater Permit states that the permittee has a duty to comply with all conditions of the permit, and that failure to comply with any permit constitutes a violation of ORS 468B.025 and the federal CWA and is grounds for an enforcement action.

45. The Sandy Industrial Stormwater Permit requires samples to be collected four times per year and analyzed for statewide and sector-specific benchmarks.  The Sandy Industrial Stormwater Permit also requires Discharge Monitoring Reports that are submitted to be signed, certified, include pH field notes, and laboratory reports for analyses conducted pursuant to the Permit.

46. Since at least May 2019, Sandy has numerous violations of the Industrial Stormwater Permit, including failures to collect and analyze the required number of samples per year and failure to submit Discharge Monitoring Reports that contain the information required by the Permit.

### FIRST CLAIM FOR RELIEF
### Failure to Comply with Sandy WWTP NPDES Permit's Waste Discharge Limitations

47. Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

48. On numerous occasions since at least November 2017, Sandy discharged effluent from its WWTP that failed to comply with the Waste Discharge Limitations contained in Sandy's WWTP NPDES Permit, including, for example, limits for flow, five-day biochemical oxygen demand (BOD5), total suspended solids (TSS), and E. coli bacteria.

49. Each day of each discharge that failed or fails to comply with each of the Waste Discharge Limitations in the Sandy WWTP NPDES Permit is a separate violation of the Permit, Section 301 of the CWA, 33 U.S.C. § 1311, and ORS 468B.025(1) and (2).

50. Unless restrained by an order of the Court, Sandy will continue to violate the Waste Discharge Limitations contained in the Sandy WWTP NPDES Permit.

51. As a result of its violations of the terms and conditions of the Sandy WWTP NPDES Permit, Sandy is subject to both injunctive relief and civil penalties, pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), as described in Paragraph 29, and ORS Chapter 468, as described in Paragraph 30 above.

## SECOND CLAIM FOR RELIEF
### Violation of Bypass Prohibition in Sandy WWTP NPDES Permit

52. Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

53. Pursuant to 40 C.F.R. § 122.41(m), and Sandy WWTP NPDES Standard Permit Condition B.3., bypasses are prohibited unless the bypass is unavoidable to prevent loss of life, personal injury, or severe property damage; there are not feasible alternatives to bypass; and the permittee submits notice of an unanticipated bypass to DEQ in the appropriate field office within 24 hours of becoming aware of the bypass.

54. Since at least November 2017, Sandy has failed to comply with the bypass prohibition condition in the Sandy WWTP NPDES Permit by allowing bypasses that did not meet the conditions specified in the Permit.

55. Each day Sandy failed to comply with the bypass prohibition conditions in the Sandy WWTP NPDES Permit is a separate violation of the Permit, Section 301 of the CWA, 33 U.S.C. § 1311, and ORS 468B.025(1) and (2).

56. Unless restrained by an order of the Court, Sandy will continue to violate the bypass conditions contained in the Sandy WWTP NPDES Permit.

57. As a result of its violations of the terms and conditions of the Sandy WWTP NPDES Permit, Sandy is subject to both injunctive relief and civil penalties, pursuant to Section

309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), as described in Paragraph 29, and ORS Chapter 468, as described in Paragraph 30 above.

### THIRD CLAIM FOR RELIEF
### Violation of Sandy Industrial Stormwater Permit

58. Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

59. On numerous occasions since at least May 2019, Sandy failed to comply with the requirements contained in Sandy's Industrial Stormwater Permit.

60. Sandy's Industrial Stormwater Permit requires stormwater discharges be monitored and sampled at least four times per year for applicable statewide and sector-specific benchmarks, and any applicable impairment pollutants. Sandy failed to collect and analyze the required number of samples per year and failed to submit Discharge Monitoring Reports that contained the information required by the Permit.

61. Additionally, the Industrial Stormwater Permit requires that discharge monitoring reports include a number of items including (1) laboratory results from the testing laboratory, including minimum detection level, Quality Assurance/Quality Control and analytical methods for the parameters analyzed; (2) submission of pH field notes and chain of custody; (3) reporting of all sample results from discharge points; and (4) the permit registrant must sign and certify submittals of discharge monitoring reports. The discharge monitoring report for samples collected May 16, 2019; November 29, 2021; December 23, 2021; January 19; 2022; and February 14, 2022, did not comply with these requirements.

62. Each day that Sandy failed to comply with each requirement of its Industrial Stormwater Permit is a separate violation of the Permit, Section 301 of the CWA, 33 U.S.C. § 1311 and ORS 468B.025(1) and (2).

63. Unless restrained by an order of the Court, Sandy will continue to violate the requirements contained in the Sandy Industrial Stormwater Permit.

64. As a result of its violations of the terms and conditions of the Sandy Industrial Stormwater Permit, Sandy is subject to both injunctive relief and civil penalties, pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), as described in Paragraph 29, and ORS Chapter 468, as described in Paragraph 30 above.

**PRAYER FOR RELIEF**

65. WHEREFORE, Plaintiffs, the United States and Oregon, request that the Court enter judgment against Defendant City of Sandy on the Plaintiffs' behalf and provide the following relief:

66. Pursuant to Section 309(b) of the CWA, 33 U.S.C § 1319(b), issue a permanent injunction directing Sandy to take all steps necessary to comply with the CWA and the Sandy WWTP NPDES Permit and Sandy Industrial Stormwater Permit, in particular enjoining Sandy from further violations of Section 301 of the CWA, 33 U.S.C § 1311(a), and the regulations promulgated thereunder, and of the terms and conditions of the Sandy WWTP NPDES Permit and Sandy Industrial Stormwater Permit, issued pursuant to Section 402 of the CWA, 33 U.S.C § 1342.

67. Pursuant to ORS 468.035(1)(k) issue a permanent injunction directing Sandy to take all steps necessary to comply with the CWA and the Sandy WWTP NPDES Permit and Sandy Industrial Stormwater Permit, in particular enjoining Sandy from further violations of ORS 468B.025 and conditions of the Sandy WWTP NPDES Permit and Sandy Industrial Stormwater Permit.

68. Pursuant to Section 309(b) of the CWA, 33 U.S.C § 1319(b), assess civil penalties against Sandy of up to $64,618 per day for each violation.

69. Pursuant to ORS 468.130, assess civil penalties against Sandy of up to $25,000 per violation, per day.

70. Grant the United States and Oregon such relief as the Court deems appropriate.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


 s/ Rachel Hankey
RACHEL HANKEY
CA Bar No. 226325
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(415) 744-6471
Rachel.hankey@usdoj.gov

NATALIE K. WIGHT
United States Attorney


 s/ Alexis A. Lien
ALEXIS A. LIEN
OR Bar No. 110569
Assistant United States Attorney
Office of United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1098
Alexis.Lien@usdoj.gov

OF COUNSEL:

**Complaint** **Page 14**
23-cv-968

PATRICK JOHNSON
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
Alaska Operations Office
222 West 7th Avenue, #19
Anchorage, Alaska 99513-7588
(907) 271-3914
Johnson.patrick@epa.gov


ELLEN F. ROSENBLUM
Attorney General
State of Oregon Department of Justice


s/ Nina Englander
NINA ENGLANDER
OR Bar No. 106119
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
(971) 673-1911
Nina.Englander@doj.state.or.us